Is it Shiflett-Kann v. George? Are you counsel for Shiflett-Kann? I am. You must be Mr. Baker. That is correct. Welcome. Thank you, Your Honor. You may proceed. Thank you very much. Good morning. My name is Scott Baker, and I am pleased to represent Joanne Shiflett-Kann in this appeal. We are here today because in November of 1998, the state court judge who was preparing to hear Ms. Shiflett-Kann's case against the Georges for a number of issues, including sexual harassment and civil rights violation, took something that didn't belong to him, and that is three years of jurisdiction that legally rested exclusively with the bankruptcy court. By doing that, and in order to do that, he misconstrued fundamental core bankruptcy law. And you appealed that to the California Court of Appeal? Counsel for Shiflett-Kann did file an appeal, although in reading the appeal and in reading all the other documents related to this case, it appears that he was very uncomfortable with that because he, along with everybody else in the case, believed that there was still a stay existent. But then the bankrupt, but the Court of Appeal, California Court of Appeal gave for an opportunity to go back to the bankruptcy court and get this thing clarified, right? The Court of Appeal, as I understand it, gave counsel a 90-day window to get an advisory opinion from the bankruptcy court. And they did nothing? He did something, he did it a few weeks late. By the time the bankruptcy court considered it, the appellate court had already dismissed the appeal. They did consider it, the bankruptcy court did consider it, and indicated that, in fact, the state court judge had made a mistake, but that the Court of Appeal would no longer be interested in the bankruptcy court's opinion on that. Regardless... Well, I'm sorry, are you saying she filed promptly, but the bankruptcy judge dragged his feet so that it went beyond the 90 days? Is that what you're saying? No, I'm not saying that. I'm saying that... You're trying to miss the 90-day window. I'm saying that apparently, from the record that I understand it, the application was made to the bankruptcy court shortly after the 90-day window elapsed, and the hearing was several months later. So when Judge Silberman said she did nothing, I think the ellipsis was, did nothing within the 90 days? Did nothing within the time period. Well, I'm not sure it did nothing, but did nothing with respect to that opportunity within the 90-day period. That was the question. Yes, there were other... That was the question. She was given a 90-day window to seek clarification of the bankruptcy court, and within that 90 days, she did not take advantage of the opportunity. That is correct, Your Honor. Why isn't that the end of the case? Because, Your Honor, void is void. And the state court, when it entered its order in November of 1998, entered a void judgment that it did not have jurisdiction to make. The state appellate court didn't have jurisdiction to do anything about it either. The only jurisdiction... Can't we do a non-proton, retroactive acknowledgement in the circumstances? I'm sorry, Your Honor? Can't we do a non-proton, retroactive acknowledgement when you grant the stay subsequently? What happened non-proton, in actuality, was that the state court never addressed the issues on the merits, but in a non-proton fashion, went back to October of 1995, and made a determination that the automatic stay terminated then. I don't think there could be any... Well, it's not a core proceeding, so we don't get to take a second look at what they did, do we? It is a core proceeding because it impacts core bankruptcy issues of discharge, the effect of the discharge, and the application, the scope, and the extent of the automatic stay. And I don't think anybody could argue that had, in October of 1995, the state court judge declared there is no discharge injunction, the automatic stay has ended, and I'm assuming jurisdiction of this matter, that that would be a void order in violation of the exclusive jurisdiction of the bankruptcy court. In effect, it was November 1998... But we don't know, right? I'm sorry? That's not what happened. No, but in effect, his 1998 order was a non-proton declaration of that exact thing. It had the same exact impact, the fact that it was more invidious than had he made that declaration at the time, because had he made that declaration at the time, Ms. Shiplet Conn would have had an opportunity to address the ramifications of that then, instead of having this order initially resulting in the deprivation of her opportunity to vindicate this important right she had, but then after that, these claims, these illicit progeny of this void judgment coming down against her for attorney's fees and serving as the basis for the malicious prosecution case that was subsequently filed by the Georges. And that's why we're here today, is because those claims and that malicious prosecution action cannot stand, because they are based on a void judgment. Well, let's begin with void judgment, I mean, the bankruptcy court lifted the stay, right? No, and I believe that that's not true. The first time that anyone... How did she get into the state court? The state court? Yeah. Well, initially, the action was filed in state court. The Georges bankruptcy stayed that action. In 1997... So how is she then back in state court? How does the state court get to do anything at all? Okay, in 1997, bankruptcy court issued limited relief from stay as to the fifth cause of action as to Mrs. George only, and only as to the available insurance proceeds, if any. Then, in a pretrial proceeding involving the dischargeability complaint in bankruptcy court in 1998, bankruptcy court said, we're getting ready to go to trial in state court on the fifth cause of action against Mrs. George, why don't we just all, why don't we let the state court decide all the issues regarding those other claims, and then you can bring the record back to me and I'll determine dischargeability. But that can't be a relief from stay, because relief from stay can only be granted under notice motion and a hearing under 362D. This occurred at a pretrial conference with regard to the bankruptcy court complaint regarding non-dischargeability. Moreover, it's clear that nobody, neither the Georges, nor the counsel for Shiflett-Kahn, or the state court judge, construed that October 1998 order of the bankruptcy court as relief from stay. In fact, I'd like to read something to you, it says, when Riblett, and this is a quote, when Riblett, which is a rather casual reference to Judge Riblett of the bankruptcy court, came around to the issue of the entire complaint being heard in the state court, she found no need to lift the automatic stay, and the order doesn't lift the automatic stay as to the entire complaint being heard in the state court. That's the argument that Georges' counsel made to the state court judge in order to convince him that the automatic stay had expired back in October of 1995, and therefore Judge Riblett's 1998 order could not be construed as relief from the automatic stay. And the state court judge obviously did not consider the 1998 order relief from stay, because he ended up making an order and a decision that stated that the automatic stay had terminated in 1995 upon the Georges' discharge. Therefore, there was no need for relief from the automatic stay because he was assuming jurisdiction as of 1995, and that's what we're saying is clearly improper, and makes his judgment void, and all of the ramifications after that judgment void as well, including the malicious prosecution action and the claims that were filed by the Georges in the Schiff-Lacombe's bankruptcy for attorney's fees and the like. I would like to reserve my minute and thirty-seven seconds for rebuttal if I may. Okay. Thank you. Good morning, Your Honors. I'm Margie George. When Judge Andreen dismissed the state court action in November, on November the 18th of 1998, he based his decision on two very important factors. The most relevant factor was the Ninth Circuit Authority at the time, which was a case called Bigelow v. C.I.R., and that was 65-3122nd. Judge O'Scanlan was a member of that panel. It was a procurium decision. And that case stated, a stay pursuant to 362A is not indefinite. Under 362C1, an automatic stay prevents acts against property of the estate. This prohibition continues until such property is no longer property of the estate. However, with regard to any of the other eight enumerated acts in 362A, the stay immediately dissolves upon issuance of the discharge by the bankruptcy court. Are you relying on sort of an automatic termination of the stay by virtue of the discharge? Yes, that's what 362C2... In other words, there's no separate order in your view that specifically lifts the stay? It automatically dissolves once the discharge is entered under 362C2C. Under 362A1, once you file a bankruptcy, a stay immediately goes into effect against various things. And one of those is the continuation of any judicial proceeding that was filed prior to the bankruptcy, which is the situation in this case. The second factor that Judge Andreen considered was the order of the discharge. This is a specific document that is mailed to every creditor with the proof of service. And it states that the above-named debtor is released from all dischargeable debts except those pending complaints, which will be determined later. Then it goes on to say any judgment hereafter obtained in any court other than this court, meaning the bankruptcy court, is null and void as a determination of the personal liability of the debtor. And then the next paragraph is unless hereafter determined by order of this court, the bankruptcy court, to be non-dischargeable. So that Judge Andreen based his decision that, well, you can continue once the automatic stay is over, then you can go ahead and proceed to judgment. And then it would go back to the bankruptcy court to determine whether or not that judgment is void, I mean is non-dischargeable. But what's the most important aspect here is that Ms. Shiflett-Kahn's attorney has failed to inform this court that after the 1998 decision by Judge Andreen, we came back into her court and said, well, there is no judgment. And she said, Judge Andreen made a very serious mistake. I will try the case in my court, all the state law causes of action, and then I will determine whether or not it's dischargeable. For two years thereafter, there were 95 docket entries in our bankruptcy adversary proceeding. Ms. Shiflett-Kahn's attorney filed numerous papers. In November of 2000, Judge Riblett signed his pretrial order. And in that pretrial order, Ms. Shiflett-Kahn had listed 43 pieces of evidence, 13 witnesses, and there was a trial date set for February the 12th of 2001. On the trial date, Ms. Shiflett-Kahn's attorney appeared and dismissed the case. So for her to say that she didn't have the opportunity to vindicate her rights, she was given probably more opportunity than any case I've ever seen of all the research that I've done in this process. Ms. Joyker, I wonder if you could tell me what's still in controversy now. Do I understand correctly that you recovered a judgment against her for your attorney's fees? Yes, I did. And that was what, for $57,000? It originally, Judge Andreen originally awarded us $50,000 for attorney's fees. Has that been collected at all? No. But what happened was she made it. Any of it? None whatsoever. And then after Ms. Shiflett-Kahn's attorney filed the appeal in the state court, my attorney cross-appealed because it was a contract action and the contract said that I was entitled to any litigation, I was entitled to attorney's fees. The court of appeals found in my favor and raised, sent it back to state court, and it was raised to $140,000, $150,000 in that area. And that's the judgment you have now? That's the judgment. I have a lien against her bankruptcy estate. And you're pursuing a malicious prosecution action? Yes, I am, Your Honor. How much is at issue in that one? Beg your pardon? How much is at issue? It's just, you know, whatever the court finds or jury finds would be appropriate. This lawsuit's been going on for about 13 years, one way or another? Yes, it has, Your Honor, 13 years. Early on, I might add, too, that early on the state court issued an order to show cause why it shouldn't be dismissed for failure to prosecute. And then they came in and filed an at-issue memorandum and began to prosecute. In the meantime, they filed a second lawsuit against this with a lot of the same issues that was in the first action, carried it to trial. It went to trial, went to judgment, and we won on that also and were awarded attorney's fees. But there's a couple of things that I would like to point out that Mr. Horvath stated in his reply brief. After I brought up the fact that even though he didn't get a trial in state court, he was given the opportunity to have a trial in federal court, in the bankruptcy court, and he refused to take it. But then he failed to even address that in his reply brief. And then he added that we had been named defendants in four other lawsuits immediately prior to our filing bankruptcy. That's absolutely untrue. There was a foreclosure shortly before we filed bankruptcy, and there was a state court, municipal court action to evict the tenant that we had in that property. But that is the only lawsuit that was filed against us during these years. The other thing he said that our insurance covered our cost of litigation. And our insurance did not even begin or even come in to represent us because of the wording of the complaint, everything was willful and malicious and such as that. So the insurance company didn't feel that they had a duty to defend us. Finally, we were able to convince the insurance company they did have a duty to defend. They came in sometime in 1996. But we had had to spend enormous amounts of attorney's fees just to protect ourself against. And there's, you know, with all these witnesses that she supposedly had and all this exhibits, you would think that she would have gone to trial, especially when she already had this judgment for the attorney's fees against her. She would have gone to trial, if nothing else, just to wipe out that judgment. And she didn't. She's drugged us on and they continue, every time they have an opportunity, to bring up these salacious allegations that were in the original complaint. And that's the reason that we're filing a malicious prosecution action to vindicate our rights and our name. Thank you. If you have any questions. Thank you. You have a minute and 35. Thank you. Briefly. On this trial that you could have had in federal court and you didn't. Well, that's a mischaracterization of what the judge of the bankruptcy court was and was not willing to do. In fact, she specifically did not want to try any state court issues and said that those would have to be referred to the district court. She had no facility for a jury. And the circumstances by that time had changed. We were now facing these judgments in the state court, and we were now facing the malicious prosecution action, which were unaffected by that. Those judgments were still sitting out there. Moreover, as we set forth in our brief, the primary reason that Ms. Shipley-Kahn brought this lawsuit to begin with was to enjoin Mr. George from these acts. Their relationship had long since ended with respect to the landlord-tenant relationship. She was no longer in a position of being the recipient of these acts. The financial condition of the Georges indicated the likelihood of recovery was minimal. And probably most importantly, Ms. Shipley-Kahn was simply worn out. She had been running this business on her own for the last few months prior to the bankruptcy court trial date, and her mother became extremely ill and died at the same time. And she just at that point said, enough is enough. I just want this to be over. But it wasn't over because the Georges then pursued their state court claims for attorney's fees and the state court claim for malicious prosecution, which, as we've asserted our ploy… Once you get these things started, it's very hard to stop them. I'm sorry? Once you get these things started, it's hard to stop them. I agree, Your Honor. You can't just say, now I want out. Sometimes you get on the merry-go-round and… But even then, Your Honor, that trial would not have done anything to have eviscerated the state court judgments, which is why we're here today. Was the case ever sent for settlement or mediation or anything of that sort? You know, I don't know the answer to that. You mean at the bankruptcy court? At any stage. I believe there were probably settlement conferences in the state court. Interestingly, this process went on and on and on, as you can see, for a number of years. And finally, in November of 1998, for the first time, the Georges raised this issue regarding the five years having elapsed and asserting that the automatic stay had terminated with the Georges' discharge in 1995. That had never been raised before. And all these other things went on in the state court level. In fact, the Georges sought a continuation of the state court trial after Ms. Shipley-Kahn was allowed to amend her state court complaint. So even at that point, they didn't say, wait, five years is run because of the discharge injunction in 1995. So there's been a lot of things procedurally that happened in this case that, in hindsight and retrospect, you'd like to go back and unwind and say, oh, this would have been a much more efficient way to have handled the problem. But we're left with the fact that the state court judge usurped his jurisdiction, dealt into the exclusive realm of the bankruptcy court, and issued an order that is void. And all the subsequent orders based thereon are void as well. Any further questions? Any interest in pursuing mediation at this point? Absolutely. Were you contacted by our mediators, by our mediation office? Not as of today's date. Well, the parties would like to try to put this thing behind them. And with the help of our mediators, we could defer submission in this case for some time and refer the case to the mediation office and see whether you can resolve it. I'm virtually certain my client would be willing to do that, and I can ask her. She's in the court right now, if that would be appropriate. Sure. Thank you. Ms. George, what do you think? The only issue I have, Your Honor, is I believe that her dismissal in the bankruptcy court, her refusal to prosecute at that point makes her res judicata under California state law. The California Supreme Court has said that a dismissal is tantamount to an admission that you didn't have a case to begin with. Well, that's certainly your position. But the question I asked you, whether you thought it would be fruitful to submit the case and defer submission and refer the parties to our mediators. The malicious prosecution action, you mean? The whole thing. The whole thing. I don't think you've heard anything. Okay. We will defer submission and refer the matter to our mediation office, and we will maintain the case unsubmitted until we hear from the mediation office as to the results of mediation. Is there anything that we should do or just wait until we hear from the mediation office? Wait until we hear from the mediation office. Thank you very much. Okay, counsel. Thank you very much. Submission is deferred. We will next hear argument on the last case on the case.
judges: Kozinski, O'scannlain, Silverman